Note.—See under (1) 35 Cyc. pp. 253. 254. (2) 34 Cyc. p. 1687. (3) 35 Cyc. p. 254. (4) 35 Cyc. pp. 254, 345 (Anno). (5) 4 .C. J. pp. 852, § 2834; 1029, § 3013. See under (1,2) anno. 31 A. L. R. 1370; 24 R. C. L. p. 425; 4 R. C. L. Supp. 1537; 5 R. C. L. Supp. p. 1285. (4) anno. 26 L. R. A. (N. S.) 10; 24 R. C. L. p. 47; 3 R. C. L. Supp. p. 1356; 4 R. C. L. Supp. p. 1527.

---

## CITIZENS-FIRST NAT. BANK et al. v. WHITING et al.

No. 15696—Opinion Filed Oct. 13, 1925.

### 1. Jury—Refusal of Jury Trial After Agreement to |Submit Issues to Court.

Where the parties to litigation, at some stage of the proceedings, enter into an agreement and stipulation to submit undetermined issues to the court for decision upon the pleadings and further evidence to be submitted, it is not error for the trial court to overrule a demand for a jury trial upon such undetermined issues of fact.

### 2. Parties—Parties Plaintiff After Assignment of Plaintiff's Rights.

Where the original plaintiff in an action sells and assigns its rights and interests in the subject-matter of the action to another, not a party to the action, such other party has the right to prosecute the proceeding in the name of the original plaintiff, or to be substituted as plaintiff, and prosecute the proceeding in his own name.

### 3. Appeal and Error—Limitation of Actions—Necessity for Urging Defense in Lower Court.

Where a party to an action seeks to take advantage of statutory limitations, such party is under the necessity of presenting the matter by some pleading in the trial court indicating and evidencing the purpose to rely upon such limitation as a bar; and where the claim of rights accruing under limitation statutes is presented for the first time in the briefs on appeal, the rights claimed will be held to be waived.

### 4. Appeal and Error—Harmless Error—Incompetent Evidence.

Where a cause has been tried to the court without a jury, and comes up for consideration on appeal, the Supreme Court will refuse to find reversible error because an incompetent witness was called and testified to material facts, or incompetent evidence was introduced to establish a material fact,

where the testimony of the incompetent witness and the incompetent evidence may be excluded from consideration and the material findings made by the trial court are still amply supported by the testimony of competent witnesses and competent evidence appearing in the record after such exclusion; unless it is made to appear that the complaining party was substantially prejudiced by the infractions of the evidence rule.

**5. Judgment Sustained.**

Record examined: and held to support the judgment of the trial court; and that the judgment should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Pawnee County; Edwin R. McNeill Judge.

Action by Oil Well Supply Company against A. H. Roeser, the Exchange National Bank of Tulsa et al.; also, action by Charles Schoenfeld et al. against Henry (A. H.) Roeser, the First National Bank of Independence, Kan., afterwards the Citizens-First National Bank of Independence, Kan., Oil Well Supply Company, the Exchange National Bank of Tulsa et al. Causes consolidated by agreement. From the final judgment the Citizens-First National Bank of Independence, Kan., and the Exchange National Bank of Tulsa prosecute appeal against C. F. Whiting, A. H. Roeser, Charles Richardson, and O. P. Hyde, as defendants in error. Affirmed.

John Y. Murry, W. N. Banks, O. L. O'Brien, and Walter L. McVey, for plaintiffs in error.

Davidson & Williams, for defendant in error C. F. Whiting.

Opinion by SHACKELFORD, C. This appeal involves the consideration of a final judgment closing two cases which were consolidated by agreement of the parties, and were tried together. One was filed in Pawnee county, by Oil Well Supply Company, a corporation, against A. H. Roeser, the Exchange National Bank of Tulsa, a corporation, et al., and numbered 3648, Pawnee district court. The gist of the action was for judgment against A. H. Roeser for the sum of $15,700.49, and to have the amount declared a lien upon a certain oil and gas leasehold estate in and to the east half of the southwest quarter of section 6, township 20 north, range 8 east. The relief sought against defendant the Exchange National Bank of Tulsa is to have the plaintiff's claim declared to be a prior lien upon the property described

ed. The defendant the Exchange National Bank of Tulsa answered claiming priority of right in and to the property. Defendant A. H. Roeser answered, putting in issue the plaintiff's claim upon the account and lien in part, and pleads a set-off of $538.40. In a subsequent pleading by defendant, the Exchange National Bank, it seeks to recover against A. H. Roeser, or Henry Roeser, (A. H. Roeser and Henry Roeser are two names for the same individual), two sums of money; one the sum of $6,081.54, and the other the sum of $6,477.33, on written obligation of A. H. Roeser, and to have the said sums decreed to be a prior lien upon the property, subject only to the rights of a joint mortgagee, the Citizens-First National Bank of Independence, Kan., which banking corporation was made a defendant by order of the court, and it filed a pleading by which it sought to recover the sum of $12,360 against the defendant A. H. Roeser, and to have the said sum declared a prior lien upon the property described. A receiver was applied for and appointed to take charge of the property involved.

At a later date Charles H. Schoenfeld and R. J. Delong filed a suit in the Pawnee county district court against Henry (A. H.) Roeser, Charles Richardson, Oil Well Supply Company, the First National Bank of Independence, Kan., the Exchange National Bank of Tulsa et al.; the action being numbered 4155 in the Pawnee district court. By this suit plaintiffs seek to recover from A. H. Roeser and other parties named, the sum of $3,513 for services rendered in drilling an oil well upon the property described in the petition, which is the same property described in the first suit referred to; and asked to have the said amount declared a prior lien as against the two banks named and the Oil Well Supply Company. No other relief is asked as against either of the banks named as defendants. A. H. Roeser answered this petition by denying liability to plaintiffs, and seeking to recover $2,475 from plaintiffs. Other pleadings were filed, not necessary to notice here.

By stipulation the two cases were consolidated and certain judgments entered, and the cases as consolidated, transferred to the district court room at Tulsa for further hearing and final disposition. The judgment entered by agreement in No. 4155 was in favor of plaintiffs Schoenfeld and Delong against defendants A. H. Roeser, Charles Richardson et al. for $3,513, with interest: In No. 3648 the Exchange National Bank of Tulsa was given a judgment against A. H.

Roeser for $6,081.54 and $6,477.93, a total of $12,359.47; and the Citizens-First National Bank of Independence, Kan., against A. H. Roeser in the sum of $12,360 with interest. It is provided in that journal entry that Emma A. Roeser is substituted as party plaintiff in No. 3648 instead of the original plaintiff Oil Well Supply Company, upon motion of her attorney, and the cause is to be further heard and such substituted plaintiff be allowed to offer evidence upon the hearing and have such judgment against A. H. Roeser as she would be entitled to under the evidence to be submitted. It is also provided that the two banking corporations should be permitted to file supplemental pleadings for the purpose of having one of the mortgages relied upon reformed so as to properly describe the property claimed to be covered by the mortgage; and it was provided that certain other parties claiming rights in the property should be brought into the case and required to plead so that the rights of all interested parties might be determined in the final judgment. The receiver was directed to make a sale of all the rights in the property owned or claimed by A. H. Roeser and to hold the proceeds subject to the orders of the court. The journal entry further recites:

"It is further stipulated and agreed that the settlement of the equities and priorities between the various litigants in both of said causes and such other matters as may properly come before the court, including the fixing of attorneys' fees to be taxed as costs, or otherwise in this action, claimed by all of the parties hereto, be retained by the court to be heard by the court in Tulsa, Tulsa county, Okla., within such reasonable time as may be agreed upon by said parties or by said court."

The journal entry above referred to was filed in the Pawnee district court on the 12th of February, 1919. The rights of Charles Richardson under his answer and cross-petition in case No. 3648 were left undetermined. He sought a judgment against A. H. Roeser in the sum of $5,285, and claimed a lien upon the property described under a chattel mortgage given by A. H. Roeser, and sought foreclosure. Also the rights of O. P. Hyde under his answer and cross-petition were undetermined. He sought judgment against A. H. Roeser in the sum of $2,500 and claimed a lien upon the property described under a chattel mortgage, and sought foreclosure. Many pleadings were filed by the parties, covering over 470 pages of the case-made.

The issues were joined and the cause called for final disposition on the 2nd of June, 1923. It seems that sometime after Emma A. Roeser was substituted as plaintiff instead of the Oil Well Supply Company, in case No. 3648, she transferred and assigned any interest she had in the property and litigation to C. F. Whiting, and he was substituted as plaintiff for Emma A. Roeser. Upon the cause being called for trial, the issue of fact to be determined was the amount A. H. Roeser was indebted upon the claim originally held against him by the Oil Well Supply Company, the original plaintiff in case No. 3648, for whom Emma A. Roeser had been substituted as plaintiff, and who had transferred her rights to C. F. Whiting who had been substituted as plaintiff for Emma A. Roeser. In other words, the question of fact to be determined was the amount of money judgment C. F. Whiting. as substituted plaintiff, was entitled to have against A. H. Roeser. Upon this question of fact the Exchange National Bank of Tulsa and the Citizens-First National Bank of Independence, Kan., demanded a trial by jury; and also upon the question of how much, if anything, C. F. Whiting had paid to Emma A. Roeser for the assignment and transfer of her claim. The demand was denied. The cause was tried to the court, resulting in a judgment in favor of C. F. Whiting against A. H. Roeser in the sum of $12,113.52, with interest and an attorney's fee of $500. The court further adopted the agreed judgments entered as above recited in favor of the banks and in favor of Schoenfeld and Delong against A. H. Roeser; the court also rendered judgment in favor of Charles Richardson against A. H. Roeser in the sum of $5,285, with interest; and also in favor of O. P. Hyde against A. H. Roeser in the aggregate sum of $2,500, with interest. The judgment fixes priorities of the parties recovering judgments as follows: That the liens of C. F. Whiting and Schoenfeld & Delong upon the property described or the proceeds thereof in the hands of the receiver were of equal rank, and prior to all other lien claims; that the liens of the Exchange National Bank of Tulsa and the Citizens-First National Bank of Independence, Kan., were of equal rank, but subsequent and subject to the liens of Whiting and Schoenfeld & Delong, but prior to all other liens; also that the liens of Charles Richardson and O. P. Hyde were of equal rank, but subsequent and subject to those of the parties above referred to. The mortgage held by the bank was reformed to cover the land hereinabove described. The money proceeds in the hands of the receiver was ordered distributed to the parties according to

the order of priorities fixed by the judgment.

The Exchange National Bank of Tulsa and the Citizens-First National Bank of Independence, Kan., prosecute appeal against C. F. Whiting, A. H. Roeser, Charles Richardson and O. P. Hyde. The plaintiffs in error discuss their assignments of error under the following heads and subdivisions: (1) The court erred in not granting plaintiffs in error a trial by jury. (2) Specification of error No. 5. (3) Subrogation. (4) Limitation and laches. (5) The trial court erred in admitting incompetent testimony.

1. The plaintiffs in error complain that they were denied a jury trial on the issue of fact between C. F. Whiting and A. H. Roeser and on the question of consideration passing between Emma A. Roeser and C. F. Whiting for her assignment of her interest in the case to him. The demand was made for a jury trial in the case when it was called for final disposition. The case had been pending for several years and final judgment was entered by agreement in favor of these plaintiffs in error against A. H. Roeser for all that they claimed was owing to them. The only matter left to be determined was priority of the liens and whether or not a mortgage, on which these plaintiffs in error relied, should be reformed so as to describe the land covered by the leasehold in which they were asserting rights as lienholders. As we understand the contentions made, it is not claimed by the complaining parties that they had a right to have the question of priority of liens, or the question of whether the mortgage should be reformed, submitted to a jury. Such matters are usually questions to be presented to the court. It seems that a right to trial by jury was claimed by these plaintiffs in error upon the issues to be tried as between C. F. Whiting and A. H. Roeser. These complaining parties were not interested in the amount of Whiting's judgment against A. H. Roeser further than the fact that the greater the amount of Whiting's judgment against Roeser, the less prospect there would be for them to get money on their judgments, if the court should find that the Oil Well Supply Company's lien should be a prior lien to the mortgages held by the plaintiffs in error; nor had they any interest in what Whiting had paid Emma A. Roeser for her transfer and assignment to him. The fact is to be kept in mind that C. F. Whiting succeeded to the rights originally asserted by the Oil Well Supply Company.

No demand for a jury trial was made by either C. F. Whiting or A. H. Roeser. It seems to appear from the record that the parties to the action had at some stage of the proceedings waived jury trial. It seems also that the trial court understood the agreed judgment, above referred to as entered before the cause was transferred to Tulsa, to mean that the parties had stipulated that the issues involved should be further tried to the court. We have above quoted the stipulation recited in the journal entry, and we find ourselves unable to disagree with the trial judge that this was a stipulation to submit the remaining and undetermined issues to the court without a jury, even though the parties demanding a jury were entitled originally to have the issues as between C. F. Whiting, or his predecessor in interest, and A. H. Roeser, submitted to a jury, which matter we find it unnecessary to determine. The denial of the jury trial, under the circumstances presented here, did not amount to a reversible error.

2. The parties complaining insist, however, under specification of error No. 5, that if the matter involved did not present jury question, and was purely equitable in its nature, the court here should weigh the evidence and reverse the judgment unless the judgment is sustained by the weight of the evidence. The equity rule has often been stated by this court to be that upon purely equitable questions, this court will weigh the evidence, but will refuse to overturn the judgment of the trial court because of alleged insufficiency of the evidence, unless it is made to appear that the judgment determining such questions is against the clear weight of the evidence. This has become so well established and fixed a rule that it seems citation of authority would be superfluous and unnecessary. It seems that no good purpose could be served by incorporating into this opinion the evidence presented by the record. It is sufficient to say that the evidence submitted to the court amply justified the court in the judgment rendered in favor of Whiting against A. H. Roeser, if the court was correct in substituting Whiting as plaintiff for Emma A. Roeser, who had been substituted as plaintiff instead of the Oil Well Supply Company. The Oil Well Supply Company made a claim that A. H. Roeser was indebted to it in the sum of $15,700.49. The original amount seems to have been $25,854.84, but payments and other credits had reduced it to the amount sued for. Part of the amount sued

for was in dispute. It seems that Emma A. Roeser, wife of A. H. Roeser, agreed that certain financial interests she had in the Helmick Oil Company might be considered and treated as assigned as security for the Oil Well Supply Company's claim against A. H. Roeser; and afterwards the amount of her interests was determined to be $10,-613.52, and payment thereof was made to the Oil Well Supply Company on its claim against A. H. Roeser, not by way of discharging the debt of A. H. Roeser pro tanto, but by way of discharging the obligation of Emma A. Roeser as surety on her agreement to be bound as surety. There seems to have been a dispute as to how much more it would take to discharge the indebtedness owing to the Oil Well Supply Company, and after some negotiations it was agreed that Emma A. Roeser would pay the additional sum of $1,500, on condition that all rights and interests in the suit against A. H. Roeser be transferred to her. The money was paid, and Emma A. Roeser succeeded to the rights of the Oil Well Supply Company by written assignment and transfer of its rights, and she was substituted as plaintiff in the action. The amount claimed by the Oil Well Supply Company was more than the amount paid by Emma A. Roeser, but the trial court confined the recovery to the actual amount paid by Emma A. Roeser. The judgment was entered in favor of C. F. Whiting for the reason, as appears from the record, that Emma A. Roeser assigned and transferred her rights in the action to Whiting and he was substituted as plaintiff in the action instead. We are unable to see that the amount of Whiting's recovery is against the clear weight of the evidence.

3. Under the head of "Subrogation," the plaintiffs in error insist that the court erred in subrogating Emma A. Roeser, and afterwards C. F. Whiting, to the rights of the Oil Well Supply Company, as against A. H. Roeser. It seems that the contention made is that when Emma A. Roeser paid $10,613.52 and the $1,500 to the Oil Well Supply Company, she was in the attitude of making voluntary payment of the Oil Well Supply Company's claim, and it would have the effect of extinguishing the lien of the Oil Well Supply Company on the leasehold on which the plaintiffs in error also claimed a lien by reason of their mortgage. Such a discharge of the Oil Well Supply Company's lien would inure to the benefit of the plaintiffs in error in case their lien should be held to be subsequent and inferior to the Oil Well Supply Company's lien. In the final judgment and decree the trial court found the priorities in favor of the lien claimed by the Oil Well Supply Company. It is not claimed here, as we understand the contention made, that the conclusion of the trial court was wrong with reference to the priority of the lien, if it was not extinguished by the payments made by Emma A. Roeser. The question, then, to be determined is whether or not the trial court was wrong in substituting Emma A. Roeser for the Oil Well Supply Company, and in permitting her to prosecute the action against A. H. Roeser the same as the Oil Well Supply Company could have done if Emma A. Roeser had not taken over its claim. It seems clear from the record that Emma A. Roeser, in effect, pledged her interests in the Helmick Oil Company to the Oil Well Supply Company, which afterwards turned out to be $10,613.52, as a further and additional security for its claim against A. H. Roeser, and upon payment to her of the amount, it was turned over to the Oil Well Supply Company and accepted by it as payment on the claim against A. H. Roeser. Then, as between the Oil Well Supply Company and A. H. Roeser, the sum of money constituted payment on the claim, but as between the Oil Well Supply Company and Emma A. Roeser, the delivery of the money amounted to a discharge of her suretyship agreement. By her suretyship agreement she had assumed such part of the obligation of A. H. Roeser to the Oil Well Supply Company as her interests in the Helmick Oil Company would pay. The amount of such interest was determined, and sometime in June, 1917, the money was paid over to the Oil Well Supply Company. Later, an agreement was reached between the Oil Well Supply Company and Emma A. Roeser that upon payment by her of an additional $1,500, the rights of the Oil Well Supply Company in the suit against A. H. Roeser should be assigned to her. The money was paid and the assignment and transfer made. It seems that in December, 1919, Emma A. Roeser was substituted as plaintiff instead of the Oil Well Supply Company; and in the agreed judgment heretofore referred to, the question of the amount she should recover as substituted plaintiff against A. H. Roeser was left open to be determined later. We are unable, after a careful consideration of the record here presented, to say that the court was wrong in substituting Emma A. Roeser as plaintiff in the action. Emma A. Roeser had first bound herself as a surety of A. H. Roeser to the amount of her interests in the Helmick Oil Company, and afterwards discharged such agreement by

turning over the money paid to her by the Helmick Oil Company to the original plaintiff. In the second transaction with the original plaintiff, she agreed to pay and did pay the sum of money for an assignment of the original plaintiff's rights in the case against A. H. Roeser. In the final hearing it appears that the claim of the original plaintiff was somewhat more than Emma A. Roeser had paid to such original plaintiff, but the court properly confined plaintiff's recovery to the actual amount paid by Emma A. Roeser to the Oil Well Supply Company. We know of no authority that has been violated by the substitution of plaintiffs. It seems clear that if Emma A. Roeser was properly substituted as plaintiff, with a right to recover from A. H. Roeser the amount of actual outlay made by her, she then had a right to sell, transfer, and assign her right so acquired to C. F. Whiting; and it was a matter of small concern to these plaintiffs in error in this proceeding what C. F. Whiting paid her for such interest. It also seems clear that whether C. F. Whiting should be substituted as plaintiff for Emma A. Roeser, was a matter of procedure and entirely in control of the parties to the transfer. Under section 223, Comp. Stats. 1921, the action might have been prosecuted to judgment in the name of Emma A. Roeser as plaintiff, or C. F. Whiting who had purchased her rights might be substituted as plaintiff, just as was done.

4. The plaintiffs in error contend that the claim of Emma A. Roeser of a right to be substituted as plaintiff for the Oil Well Supply Company, and subrogated to its rights as against A. H. Roeser, was barred by limitation statutes. We are unable to see how this contention can be maintained. It appears from the contentions made that Emma A. Roeser made the suretyship agreement with the Oil Well Supply Company sometime in 1913. The Oil Well Supply Company filed its suit in the district court of Pawnee county August 10, 1915, making plaintiff in error the Exchange National Bank of Tulsa a party defendant. No right was asserted against this defendant except as to the priority of its lien. This plaintiff in error filed answer and cross-petition. Such pleading disclosed interests in the property covered by the lien claim owned or claimed by the Citizens-First National Bank of Independence, Kan., the other plaintiff in error here. It was made a party defendant and filed answer and cross-petition. The only conflict between it and the Oil Well Supply Company was as to priority of liens.

Both plaintiffs in error, as defendants, were asserting rights to a personal judgment against A. H. Roeser. The amounts were determined by agreement and merged into a judgment against A. H. Roeser, as has been heretofore mentioned. Sometime in the summer of 1917, Emma A. Roeser made good to the Oil Well Supply Company on her suretyship agreement, and later on she paid an additional $1,500 and took an assignment in writing to all the right of the Oil Well Supply Company in its suit against A. H. Roeser, and in 1919 she was substituted as plaintiff in the action. It seems that under section 223, Comp. Stats. 1921, Emma A. Roeser, who acquired the interests of the Oil Well Supply Company, might have prosecuted the action in its name, or be substituted for it as plaintiff, and prosecute the action in her own name. Anderson v. Ferguson, 12 Okla. 307, 71 Pac. 225; Leach v. Sargent, 55 Okla. 203, 154 Pac. 1143; Purcell Mill & Elevator Co. v. Canadian Valley Const. Co., 58 Okla. 629, 160 Pac. 485. We know of no authority to the contrary. Early in 1921, Emma A. Roeser transferred and assigned her interest in the action to C. F. Whiting, and soon afterwards he was substituted as plaintiff. Both substitutions were made before the case went to final judgment. We are unable to find that A. H. Roeser, against whom the personal judgment was sought, ever raised the question of statutory limitations against either of the substituted plaintiffs or against the original plaintiff, and we are unable to see how a plea of the limitation statutes could avail these plaintiffs in error. We are unable to see from this record that statutory limitations were available to any of the parties. This court has held that parties seeking to take advantage of the limitation statutes must do so by interposing a plea in the trial court of statutory limitations. Reaves v. Turner, 20 Okla. 492, 94 Pac. 543; Buchner v. Baker, 65 Okla. 130, 164 Pac. 659. It seems to be a well-recognized rule that failure to raise the question of statutory limitations in the trial court amounts to a waiver of rights which might be asserted under the limitation statutes. It is not pointed out by the plaintiffs in error where the question of statutory limitation was ever raised in the trial court. The record here presented contains approximately 900 pages. The pleadings take up approximately 470 pages. We are unable to find that the matter of statutory limitations was ever referred to in any pleading in the trial court. No reference is made directly or indirectly to any such matter in the motion for a new trial

or the petition in error. The first reference we find to rights acquired under the statute of limitations is in the brief of the plaintiffs in error. The rights acquired under limitation statutes, which are in no way asserted in the trial court, cannot, for the first time, be asserted here. This seems to be elementary.

5. The plaintiffs in error complain that the trial court erred in permitting the introduction of incompetent evidence to establish the amount which Emma A. Roeser paid to the Oil Well Supply Company for its interest in the action against A. H. Roeser. One basis of the complaint is that A. H. Roeser was the husband of Emma A. Roeser and was therefore incompetent to testify in her behalf except as to matters in which he was acting as her agent. Another is that one witness was permitted to read into the record purported minutes and records of the Helmick Oil Company without having the original records or authenticated copies before him.

Upon the first contention it will be observed that while A. H. Roeser and Emma A. Roeser were husband and wife, she was plaintiff until C. F. Whiting was substituted, and her husband was defendant. It would seem that as between them either one could testify about facts concerning the accounts, whether one was acting as agent for the other or not. The defendant A. H. Roeser testified about the transaction between Emma A. Roeser and the Oil Well Supply Company, in which she agreed to give further security for its claim against him. It seems that A. H. Roeser carried on the negotiations and attended to the details for her. This, perhaps, would take his testimony concerning the transaction out of the inhibition against the husband testifying for his wife. But be that as it may, there was sufficient other competent evidence in the record from which the trial court could easily arrive at what the transaction was. If the trial court had excluded the testimony of A. H. Roeser about the transaction and the amount paid, still the fact was proven sufficiently to support the conclusions reached by the trial court. Even though there was an infraction of the evidence rule, it should not work a reversal of the judgment. Some of the testimony of A. H. Roeser was undoubtedly competent because he was taking care of the details for his wife. Even though some of

the testimony was incompetent, it was cumulative and not the sole evidence upon the subject. It seems that where competent evidence is adduced to establish a proposition, along with incompetent evidence also tending to establish the proposition, the finding by the trial court will be deemed to be based upon the competent evidence. It also seems that a reversal of the judgment would not be justified, even though some of A. H. Roeser's testimony was incompetent under the evidence rule, where we might discard all that was incompetent on any theory and still have ample evidence to support the judgment. Under such state of the record, it is not easy to see how the plaintiffs in error were prejudiced by such of A. H. Roeser's testimony as is charged to be incompetent and error to admit it.

It appears that the second contention is not supported by the record. The witness called testified that he had the original records relied upon by the Helmick Oil Company before him. The minutes and records kept by the Helmick Oil Company were offered to explain where Emma A. Roeser's money came from by means of which she was able to pay to the Oil Well Supply Company the sum of $10,613.52. The facts that she had the money of her own and that she paid it, were not disputed by anybody so far as we are able to find in the record. The minutes and records of the Helmick Oil Company might be stricken from the record and discarded and consideration thereof denied, and still it was undoubtedly proven that Emma A. Roeser had $10,613.52 of her own money which she turned over to the Oil Well Supply Company and which it credited on the A. H. Roeser account, amounting to payment as between it and A. H. Roeser.

We find no error in admitting the testimony complained of, so prejudicial to the rights of the plaintiffs in error as to justify reversing the judgment.

We have carefully examined all the matters complained of. There is no error in the record requiring a reversal of the judgment. The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 C. J. p. 204, § 114. (2) 5 C. J. p. 1006, § 219. (3) 3 C. J. p. 709, § 604; 37 C. J. p. 1213, § 718. (4) 4 C. J. pp. 999, 1000, § 2982. (5) 4 C. J. p. 1129, § 3122.